Michael BRANNOCK, Appellant,

v.

LABOR & INDUSTRIAL RELATIONS COMMISSION OF MISSOURI, et al., Respondents.

No. WD 39203.

Missouri Court of Appeals,
Western District.

Dec. 29, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1988.

Application to Transfer Denied
March 15, 1988.

Samuel I. McHenry, Kansas City, for appellant.

Sharon Willis, Kansas City, Sandy Bowers, Jefferson City, for Missouri Div. of Employment Sec.

James Crenshaw, Jefferson City, for Labor and Indus. Relations Com'n of Missouri.

Before KENNEDY, C.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Claimant Michael Brannock appeals from a trial court judgment affirming the Labor and Industrial Relations Commission's decision that he was not entitled to unemployment compensation benefits. The Commission adopted the findings of the appeals tribunal which found Brannock had left his work voluntarily on April 12, 1985, without good cause attributable to his work or to his employer, Hernstrom's Waterworks, Inc., an installer of underground lawn watering systems. As a result, Brannock was *disqualified from benefits until he earned* wages for insured work after the voluntary separation equal to ten times his weekly benefit amount. Section 288.050.1, RSMo 1978.

Review is from the decision of the Commission, not the circuit court. *Kirn v. Labor & Industrial Relations Commission*, 700 S.W.2d 523, 525 (Mo.App.1985); *Chrysler Corp. v. Division of Employment Security*, 628 S.W.2d 359, 360 (Mo.App.1981). The record is considered in the light most favorable to the Commission's findings. *Chrysler*, 628 S.W.2d at 360. The Commission's findings of fact and decision are reviewed to determine whether they are authorized by law and supported by competent and substantial evidence. *Rothschild v. Labor & Industrial Relations Commission*, 728 S.W.2d 720, 721 (Mo.App.1987); *Howard v. Labor & Industrial Relations Commission*, 671 S.W.2d 826, 827 (Mo.App. 1984). The Commission's findings of fact are conclusive if supported by such evidence. *Howard*, 671 S.W.2d at 827. The court is not bound by the Commission's conclusions of law. *Rothschild*, 728 S.W. 2d at 721. Whether a claimant has good cause to terminate employment is a question of law. *Id.* Brannock challenges the Commission's conclusion that he did not have good cause attributable to his work or his employer for terminating his employment.

The facts are agreed upon by the parties. Brannock was employed by Hernstrom's Waterworks as an installer of underground watering systems from October, 1984 until April 12, 1985. He began his employment in the metropolitan Kansas City area making $6.00 per hour. In February, 1985, in conjunction with a contract to install a watering system at New Bloomfield, Missouri (near Jefferson City), the employer offered Brannock employment at $8.00 per hour, along with motel accommodations and one meal per day. Brannock accepted. During the last two weeks of his four weeks on the New Bloomfield job, Brannock only worked 32 and 22 hours due to inclement weather. Brannock approached his employer requesting more hours, indicating that with out of pocket expenses related to working out of town which cost him $80 per week, he could not get by on the reduced hours. The employer responded that there was nothing he could do since the down time was weather related. Brannock then quit the job. He argues on appeal he had on these facts the necessary good cause attributable to his work or his employer justifying termination.

Brannock has the burden of establishing good cause. *Rothschild*, 721 S.W.2d at 721. "The voluntary termination of employment must be made in good faith and conform to the conduct of the average ablebodied and qualified worker in a similar situation to terminate his or her employment with its certain wage rewards in order to enter into the ranks of the compensated unemployed." *Division of Employment Security v. Labor & Industrial Relations Commission*, 636 S.W.2d 361, 363 (Mo.App.1981). "To constitute 'good cause,' the facts 'motivating the employee must be real not imaginary, substantial not trifling, and reasonable not whimsical, and good faith is an essential element.'" *Rothschild*, 728 S.W.2d at 721.

Brannock argues the employer's promise of full time work was not kept. The record does not establish such a promise was ever made. In addition, Brannock testified he

worked partial days for partial pay in the event of inclement weather when he worked in Kansas City. Not only should it be expected that outdoor work will sometimes be interrupted by weather conditions, as was found by the Commission, it is apparent that Brannock was aware of and had previously accepted that aspect of the job. Given this knowledge, it cannot be argued that the reduced hours constituted a good faith reason for termination, particularly when Brannock's rate of pay was increased for the out of town job in New Bloomfield. *See, Armco Steel Corporation v. Labor & Industrial Relations Commission,* 553 S.W.2d 506 (Mo.App. 1977) (a mere reduction in *wages* is insufficient; a substantial reduction of 44% is regarded as good cause); *Division,* 625 S.W.2d at 884, (reduced *hours* as sole external pressure on a piece work employee held not to justify good cause).

Brannock's citation of authority for the unreasonableness of demanding that an employee travel long distances for a part-time job is without merit. Brannock was offered a job at an increased rate with some of his expenses to be paid. He accepted, with no other demand having been made.

These facts are not like *Armco, supra,* where the employee felt like he was being "forced out" by the employer downgrading his actual job and pay (44%), but more akin to the *Division* case, *supra,* where the court did not hold for the employee who worked on a piece work basis solely because of a reduction in production hours. The employer and employee here re-negotiated for more pay and benefits to make up for out of town employment.

Overall, Brannock's decision to terminate his employment must be regarded as hasty and not made with good cause. He agreed to the terms that took him to the job in New Bloomfield. The circumstances he identifies as unusual enough to justify termination were express in the offer or could have been anticipated with only minimal foresight. There was no unilateral imposition of terms or deception. Having accepted the work and the attendant conditions,

Brannock cannot now argue the conditions compell a characterization of good cause on his termination. *See e.g., Musgrave v. Eben Ezer Lutheran Institute,* 731 P.2d 142 (Colo.App.1986); *Jones v. Board of Review,* 136 Ill.App.3d 64, 90 Ill.Dec. 848, 482 N.E.2d 1131 (1985); *Joshua v. Office of Employment Security,* 460 So.2d 714 (La. App.1984); *Naylor v. Unemployment Compensation Board of Review,* 83 Pa. Cmwlth. 502, 477 A.2d 912 (1984).

It is the opinion of this court the findings of the Commission that Brannock's termination was not for good cause attributable to his work or his employer were authorized by law and supported by competent and substantial evidence. "Good cause" in a case such as this is a question of law, which has been properly decided. *Belle State Bank v. Industrial Commission of Missouri,* 547 S.W.2d 841, 844 (Mo.App. 1977). Brannock's disqualification for benefits is therefore affirmed and the judgment is affirmed.